UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BRADLEY J. STINN,

                          Petitioner,

                                                              **MEMORANDUM & ORDER**
              - against -                                       11-CV-2071 (PKC)

UNITED STATES,

                          Respondent.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Defendant-Petitioner Bradley J. Stinn ("Petitioner") seeks a writ of error *coram nobis*

pursuant to 28 U.S.C. § 1651(a) to vacate his 2009 convictions for criminal conspiracy to commit

securities fraud, mail fraud, and wire fraud; securities fraud; and mail fraud, arguing that those

convictions are invalidated by the Supreme Court's decision in *Ciminelli v. United States*, 598

U.S. 306 (2023).   On the same grounds, he also moves pursuant to Federal Rule of Civil

Procedure 60(b) to vacate a 2012 judgment that denied him *habeas* relief.   Upon review of the

extensive trial record and the parties' submissions, and for the reasons set forth below, both

motions are denied.

## BACKGROUND

### I.    Relevant Criminal Proceedings

       Petitioner served as the Chief Executive Officer of Friedman's Inc. ("Friedman's"), a

publicly traded company, from 1992 to 2003.   (No. 24-CV-2181, Dkt. 1-1 at ¶ 3.)[1]   On February

13, 2007, Petitioner was indicted on conspiracy to commit securities fraud, mail fraud, and wire

---

[1] The docket entries relevant to the instant motions are spread over several different cases.
Where the Court cites to docket entries from cases other than the lead case, the citation is preceded
by the relevant case number.

fraud; securities fraud; false-filing with the Securities and Exchange Commission; mail fraud; and certification of a false financial report.  (No. 07-CR-0113, Dkt. 1 ¶¶ 43–54.)  The charges arose from his conduct as Friedman's Chief Executive Officer.  (*Id*. ¶ 5.)  On September 17, 2007, the government filed a superseding indictment with additional factual allegations.  (No. 07-CR-0113, Dkt. 122.)  On December 3, 2007, a second superseding indictment was filed, alleging only three counts: conspiracy to commit securities fraud, mail fraud, and wire fraud in violation of 18 U.S.C. § 1349; securities fraud in violation of 18 U.S.C. § 1348; and mail fraud in violation of 18 U.S.C. § 1341.  (No. 07-CR-0113, Dkt. 185 ¶¶ 47–52.)  On March 24, 2008, after a seven-week trial, a jury found Petitioner guilty on all three counts of the operative indictment.  (No. 07-CR-0113, Dkt. 364 at ECF[2] 8; Gov't Opp'n, Dkt. 42 at 1.)  Additionally, the jury found that, pursuant to a forfeiture allegation in the indictment, the proceeds traceable to the charges amounted to $1,019,000.  (No. 07-CR-0113, Dkt. 364 at ECF 8.)  At sentencing, in addition to the forfeiture amount, the presiding judge, the Honorable Nina Gershon, ordered Petitioner to pay restitution of $4,393,575 and $300 in special assessments.  (*Id.* at ECF 6.)

During the trial, the government presented evidence that Petitioner had intentionally manipulated accounting records, misled investors, and profited from his actions.  (No. 07-CR-0113, Trial Tr.[3] ("Tr.") 1007:25–1012:4.)  To briefly summarize some of the evidence, Friedman's former Controller testified that after the close of a given fiscal period, books for those fiscal periods would be "kept open for maybe another week or two, and payments made in that period subsequent to our period end date were then applied . . . as if they occurred" before the next period began.

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] The trial transcript in the underlying criminal case is docketed over several docket entries, including, No. 07-CR-0113, Dkt. Nos. 282–85, 300–03, 332–49, 352.

(No. 07-CR-0113, Tr. 2308:24–25, 2330:16–2331:24.)  Friedman's former Senior Vice President

and Chief Financial Officer testified that he and Petitioner would "basically arrive at a[n] [Earnings

Per Share] number . . . and . . . manipulate the accounting records . . . to arrive at that number."

(No. 07-CR-0113, Tr. 939:9–14, 1007:25–1009:24.)  According to the Vice President of Corporate

Credit at the time, Petitioner also intentionally charged-off more debt than disclosed to investors

based on company policy.  (No. 07-CR-0113, Tr. 2710:15–20, 3046:20–3047:15.)  Additionally,

Petitioner received a bonus of $352,000 in 2002, which he would not have received "[a]bsent the

manipulation[s.]"  (No. 07-CR-0113, Tr. 1400:1–10.)

Throughout the trial, the government relied in part on the right-to-control theory in

presenting its case.  The "'right to control' theory of fraud" permitted juries to find "a

defendant . . . guilty of wire fraud if he scheme[d] to deprive the victim of potentially valuable

economic information necessary to make discretionary economic decisions." *Ciminelli*, 598 U.S.

at 308–09 (quotation marks omitted).

The Honorable Nina Gershon, who presided over the trial, instructed the jury on the

elements of conspiracy, mail fraud, and securities fraud.  Specifically, Judge Gershon gave the

following instruction at the close of trial:

> A 'scheme or artifice [to defraud]' in [the context of securities fraud] means a plan
> or course of action that intends some harm to the property rights of
> another. . . . Thus a scheme to defraud is any plan, device or course of action to
> obtain money or property by false or fraudulent representations . . . . The
> government must prove beyond a reasonable doubt that the scheme to defraud
> contemplated or intended some harm to property rights of another.  This
> requirement is satisfied if you find either that the government proved beyond a
> reasonable doubt that the defendant planned to obtain or actually obtained money
> from Friedman's by materially fraudulent representations or that the defendant
> intended that other individuals would make investment decisions as to Friedman's
> shares based on materially fraudulent representations.  However, you must be
> unanimous as to at least one of these alternatives.

(No. 07-CR-0113, Tr. 4402:25–4406:1.)  The jury convicted Petitioner on all three counts.  (No. 07-CR-0113, 3/24/2008 Dkt. Entry.)  Although the conspiracy charge had three potential underlying objects (wire fraud, mail fraud, and securities fraud), the jury was not required to fill out a special verdict form, and so it is unclear which of the three alternatives the jury ultimately relied on for purposes of that conviction.  The jury was instructed that it did not need to be unanimous as to the object(s) of the conspiracy.  (No. 07-CR-0113, Tr. 4430:4–9.)  Following Petitioner's conviction, Judge Gershon sentenced Petitioner to 144 months' imprisonment and three years of supervised release on April 29, 2009.  (No. 07-CR-113, Dkt. 364 at ECF 1.)  Judgment was entered on May 4, 2009.  (*Id.*)  Petitioner served his prison term and was released on September 18, 2019.  (No. 24-CV-2181, Dkt. 1-1 at 2.)  Thereafter, he completed three years of supervised release on September 22, 2022.  (*Id.*)

## II.    Supreme Court's Decision in *Ciminelli*

On May 11, 2023, the Supreme Court struck down the "Second Circuit's longstanding 'right to control' theory of fraud," described above.  *Ciminelli*, 598 U.S. at 308–09.  In *Ciminelli*, the right-to-control theory was exclusively relied on to convict the defendant of wire fraud under 18 U.S.C. § 1343 and conspiracy to commit wire fraud under 18 U.S.C. § 1349.  *Id.* at 310.  The jury instructions on the right-to-control theory in *Ciminelli* described "the term 'property' in § 1343 [as] 'includ[ing] intangible interests such as the right to control the use of one's assets."  *Id.* at 311.  Specifically, the instructions stated that the "jury . . . could find that [the defendant] harmed [a nonprofit corporation's] right to control its assets if [said corporation] was 'deprived of potentially valuable economic information that it would consider valuable in deciding how to use its assets.'"  *Id.*  The jury convicted Ciminelli of wire fraud and conspiracy to commit wire fraud; the Second Circuit affirmed.  *Id.*

After granting certiorari, the Supreme Court reversed the conviction, holding that the "so-called 'right to control' is not an interest that ha[d] 'long been recognized as *property*' when the wire fraud statute [§ 1343] was enacted." *Id.* at 314 (emphasis added) (quoting *Carpenter v. United States*, 484 U.S. 19, 26 (1987)).    The Supreme Court further criticized the theory for "criminaliz[ing] traditionally civil matters and federaliz[ing] traditionally state matters."  *Id.* at 316; *id.* at 315–16 ("The theory thus makes a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law—in flat contradiction with our caution that, 'absent a clear statement by Congress,' courts should 'not read the mail and wire fraud statutes to place under federal superintendence a vast array of conduct traditionally policed by the States.'" (cleaned up) (quoting *Cleveland v. United States*, 531 U.S. 12, 27 (2000))); *id.* at 312 ("[T]he fraud statutes do not vest a general power in 'the Federal Government . . . to enforce (its view of) integrity in broad swaths of state and local policymaking." (quoting *Kelly v. United States*, 590 U.S. 391, 404 (2020))).    According to *Ciminelli*, "the government must prove not only that wire fraud defendants engaged in deception, but also that money or property was an object of their fraud."  *United States v. Runner*, No. 18-CR-0578 (JS), 2023 WL 3727532, at *2 (E.D.N.Y. May 30, 2023) (quotation marks omitted).

## III.    Procedural History

In 2012, Petitioner moved for *habeas* relief pursuant to 28 U.S.C. § 2255 in part because of the government's reliance on the right-to-control theory.  (Dkt. 1.)  At the time, the right-to-control theory was still good law in the Second Circuit.  *See United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991), *abrogated by Ciminelli*, 598 U.S. at 306.  Judge Gershon denied Petitioner's *habeas* petition by order dated April 18, 2012 ("April 18, 2012 Order"), which relied in part on reasoning that affirmed the right-to-control theory as per *Wallach*.  (Dkt. 29 at 18.)  On March 25,

2024, Petitioner filed a motion pursuant to Federal Rule of Civil Procedure ("Rule") 60(b) for relief from the April 18, 2012 Order. (Dkt. 33.) Also on March 25, 2024, Petitioner filed a writ of error *coram nobis*, arguing that it would be unjust to maintain his conviction.[4] (No. 24-CV-2181, Dkt. 1.)

## DISCUSSION

### I.     Writ of Error *Coram Nobis*

#### A.     Legal Standard

The All Writs Act, 28 U.S.C. § 1651(a), gives a federal court the authority to issue a writ of error *coram nobis*, which allows a petitioner to vacate a conviction after serving his or her sentence. *United States v. Mandanici*, 205 F.3d 519, 521 n.1 (2d Cir. 2000). "The writ of error coram nobis is an extraordinary remedy that issues only in extreme cases, and typically is available only when habeas relief is unwarranted because the petitioner is no longer in custody." *United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018) (citation and quotation marks omitted). To receive *coram nobis* relief, a petitioner must show that (1) "sound reasons exist for failure to seek appropriate earlier relief," (2) "the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ," and (3) "there are circumstances compelling such action to achieve justice." *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014) (quoting *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996)).

#### B.     Application

##### 1.     Sound Reason Exists for Petitioner Not Seeking Relief Earlier

As discussed *supra*, the Supreme Court decided *Ciminelli* on May 11, 2023. Petitioner filed his petition for a writ of *coram nobis* 319 days later. (No. 24-CV-2181, Dkt. 1.) Petitioner

---

[4] Judge Gershon recused herself from Petitioner's case when the Rule 60(b) motion was filed. That case, filed under No. 11-CV-2071, was then transferred to the undersigned and consolidated with No. 24-CV-2181, the docket containing Petitioner's writ of error *coram nobis*.

could not have brought this petition before *Ciminelli* was decided and the Court does not find that the 319-day delay in doing so is unreasonable. *See Doe v. United* States, 915 F.3d 905, 915 (2d Cir. 2019) (explaining that in determining whether sound reasons for delay exist "[t]he critical inquiry . . . is whether the petitioner is able to show justifiable reasons for the delay" (quoting *Foont*, 93 F.3d at 80) (alteration in original)). The Court therefore finds that there exists "sound reason" for Petitioner not having filed his petition sooner.

2.    Continuing Legal Consequences

With regard to the second factor, the Court finds that Petitioner has adequately described continuing legal harms he suffers as a result of his conviction. (*See* No. 24-CV-2181, Dkt. 1-1.) A felony conviction can have lifelong consequences even when criminal defendants are no longer in custody. For example, in California, where Petitioner lives, (*id.* ¶ 1), his conviction means that he cannot serve on a grand jury, Cal. Penal Code § 893, cannot hold any California public office, Cal. Const. art. VII § 8, and cannot possess or control a firearm and can be criminally charged for doing so, Cal. Penal Code § 29800; 18 U.S.C. § 922(g)(1). He is also barred from traveling to some countries internationally, (No. 24-CV-2181, Dkt. 1-1 ¶ 23), and is specifically prevented from serving as an officer of a publicly traded company in the banking industry, (*id.* ¶¶ 13–15); 12 U.S.C. § 1829; 15 U.S.C. § 78c(a)(39)(F). Therefore, Petitioner has shown that he continues to suffer legal consequences that would be remedied by grant of the writ.

3.    Compelling Circumstances to Achieve Justice

As to the final factor, although the Supreme Court's elimination of the right-to-control theory in *Ciminelli* could support the grant of a writ of *coram nobis,* the Court finds that it does not here.

"While a new rule of constitutional criminal procedure generally does not apply retroactively on collateral review, a new rule of substantive criminal law is presumptively

retroactive because a defendant may have been punished for conduct that simply is not illegal." *Mandanici*, 205 F.3d at 525 (citation and quotation marks omitted). This principle also applies to interpretive changes to substantive criminal law. *United States v. Reguer*, 901 F. Supp. 515, 520 (E.D.N.Y. 1995) (citing *Davis v. United States*, 417 U.S. 333 (1974)); *Johnson v. United States*, No. 23-CV-5600 (NGG), 2024 WL 1740916, at *6 (E.D.N.Y. Apr. 23, 2024). "The Supreme Court invalidating the right-to-control theory in *Ciminelli* may therefore serve as a basis for coram nobis relief for defendants convicted under this theory." *Johnson*, 2024 WL 1740916, at *6.

However, the burden is on Petitioner to show that the writ is warranted, and "the [C]ourt applies a harmless error analysis" to determine "whether the flaw in the instructions had substantial or injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008)).[5] "Substantial . . . effect or influence" is met if "in the judge's mind, the matter is so evenly balanced that he or she feels in virtual equipoise as to the error's harmlessness." *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995). "The question. . . is whether there is grave doubt that including the invalid right-to-control theory affected the verdict's outcome." *Johnson*, 2024 WL 1740916, at *7. As in *Johnson*, whether this *coram nobis* factor is met is determinative. *Id.* at *6. Thus, if there is no "grave doubt that the jury would have convicted [the petitioner] under [a separate] theory based on a review of the trial record, the error is harmless and [this] *coram nobis* factor is not met." *Id.* at *7.

---

[5] Petitioner argues that the government "waive[d] harmless error review" by arguing against the use of a special verdict form at trial, which ultimately "caused any confusion" about the jury's reasoning. (Dkt. 43 at 5–6.) The Court disagrees. The government cannot have waived harmless error review by requesting a general verdict form because it did not yet know—nor could it have known—that one of the theories on which it relied at trial was invalid. After all, at the time the government argued for the general verdict form, the right-to-control theory was still valid.

Petitioner argues that the writ is warranted for two primary reasons. First, Petitioner contends that his conviction was based on the right-to-control theory and that courts often grant *coram nobis* relief "when the Supreme Court rejects the legal basis for petitioners' convictions." (No. 24-CV-2181, Dkt. 1 at 21.) Second, Petitioner argues that his salary raise and bonus could not satisfy the "money or property" element of 18 U.S.C. §§ 1341, 1343, or 1348. (*Id.* at 17–21.)

The government argues that it is possible, if not likely, that the right-to-control theory played no part in the jury's verdict, given that the underlying object of the conspiracy of which Petitioner was convicted could have been wire fraud, mail fraud, or securities fraud and that, even assuming the jury convicted Petitioner of wire fraud conspiracy, there is no way to know if "they did so on the right-to-control theory invalidated by the Supreme Court in *Ciminelli*." (Gov't Opp'n, Dkt. 42 at 6–7.) In support of this argument, the government points out that Petitioner was independently convicted of both mail and securities fraud and that the government relied on a traditional theory of wire fraud at trial. (*Id.* at 12–15.)

As an initial matter, the Court notes that the government appears to misapprehend Petitioner's argument as being limited to the contention that *Ciminelli* invalidated the right-to-control theory as to wire fraud only. Petitioner, however, argues that the Supreme Court's holding in *Ciminelli* extends beyond wire fraud and reaches the two non-conspiracy counts of which Petitioner was convicted, i.e., mail and securities fraud under 18 U.S.C. §§ 1341 and 1348, respectively. (Petr'r's Reply, Dkt. 43 at 2.) Indeed, there may be merit to this reading of *Ciminelli* given the similarities between the wire fraud statute, on the one hand, and the mail and securities fraud statutes on the other. *Compare* 18 U.S.C. § 1342 (wire fraud statute), *with id.* § 1341 (mail fraud statute) and *id.* § 1348(2) (securities fraud statute); *see also Ciminelli*, 598 U.S. at 316 (holding that "the right-to-control theory cannot form the basis for a conviction under *the federal*

*fraud statutes*," as opposed to merely under the wire fraud statute (emphasis added)).  The question of how far *Ciminelli* extends has been appealed to the Second Circuit, but the Circuit has not yet weighed in.  *See United States v. Barbera*, No. 21-CR-0154 (JGK), 2023 WL 6066249, at \*1 (S.D.N.Y. Sept. 18, 2023), *appeal filed*, No. 23-7255 (2d Cir. Oct. 2, 2023); *United States v. Fishbein*, No. 21-CR-0296 (PAC), 2023 WL 5035179, at \*9 (S.D.N.Y. Aug. 8, 2023), *appeal filed*, No. 24-0472 (2d Cir. Feb. 27, 2024).  For the purposes of this case, the Court assumes without deciding that *Ciminelli* also applies to mail fraud and securities fraud.  Even so, for the reasons explained below, the Court finds that relief is not warranted in this case.

a)   <u>Jury Did Not Necessarily Rely on the Right-to-Control Theory</u>

Where "there is sufficient evidence in the record for the jury to have found, beyond a reasonable doubt, that the government proved that [Petitioner] engaged in a scheme with the objective of 'obtaining money or property,'" his convictions will stand.  *United States v. Tuzman*, Nos. 21-2229, 21-2379, 2024 WL 1173044, at \*2 (2d Cir. Mar. 19, 2024); *see also id.* at \*3 (finding unpersuasive the argument that wire fraud and related conspiracy convictions should be vacated because it would be "impossible to tell whether the jury relied on the improper right-to-control jury instruction").  Here, "the trial record shows that the government did not rely solely on the right-to-control theory," but that it instead presented evidence for conviction on both a right-to-control theory and a traditional fraud theory.  *Id.* at \*3.  Not only was the traditional theory of fraud available to the jury in this case, but there was ample evidence of traditional fraud that the jury could have relied on for all three convictions.  In that respect, this case mirrors *Tuzman*, in which "the government indicted Defendant[] under the traditional property theory, the government presented evidence to the jury at trial supporting this theory, and the district court properly charged the jury under this theory."  *Id.* at 3 n.2.  As a result, in *Tuzman*, the Second Circuit affirmed the district court's refusal to overturn Defendants' conviction in a summary order.

10

Here, Judge Gershon instructed the jury at trial that the government had to prove a "scheme to defraud [that] contemplated or intended some harm to property rights of another," which is "satisfied if you find either that . . . *the defendant planned to obtain or actually obtained money from Friedman's by materially fraudulent representations* or that the defendant intended that other individuals would make investment decisions as to Friedman's shares based on materially fraudulent representations." (No. 07-CR-0113, Tr. 4405:15–24 (emphasis added).) The same instruction was relied on for the "scheme or artifice to defraud" element of mail and wire fraud. (No. 07-CR-0113, Tr. 4421:9–20, 4429:11–22.)

At trial, the government presented evidence that would satisfy the traditional fraud theory. For example, Bob Cruickshank, the Chairman of Friedman's Compensation Committee, testified that Petitioner's bonus, and other performance incentives, were the "direct result of the reported earnings" for 2002. (No. 07-CR-0113, Tr. 1943:24–1944:6, 1959:1–1961:25.) Also, other employees testified that the bonus structure was dependent on the company's Earnings Per Share ("EPS"), which Petitioner allegedly manipulated. (No. 07-CR-0113, Tr. 1399:1–1402:1, 2340:15–22.) One employee stated that "absent the manipulation," he and Petitioner would not have received bonuses for 2002. (No. 07-CR-0113, Tr. 1400:1–6.) As Judge Gershon explained when she denied Petitioner's previous *habeas* petition, "[b]oth the increased salary as well as the bonus that petitioner was awarded in 2002 clearly constitute money or property, as required by 18 U.S.C. §§ 1341, 1343, and 1348," which "constitutes textbook fraud." (Dkt. 29 at 15–16.)

Additionally, the rejection of the right-to-control theory does not preclude the government from arguing that there was a scheme to obtain money. In *Tuzman*, the Second Circuit distinguished between cases where a defendant "merely affect[s] investors' rights to information" and where a defendant "knowingly send[s] false financial statements to [] investors precisely to

deprive them of their money . . . or to obtain money." *Tuzman*, 2024 WL 1173044, at *3. In this regard, the instant case more closely resembles *Tuzman* than *Ciminelli*: here, Petitioner and his Chief Financial Officer made false statements in the prospectus of a $44 million stock offering, (No. 07-CR-0113, Tr. at 1478:24–1484:1), "to obtain more money from investors," *Tuzman*, 2024 WL 1173044, at *2.

In light of this evidence, the Court finds that there is no "grave doubt" as to whether the jury reasonably would have convicted Petitioner under the traditional fraud theory that was presented to the jury.

4.    "Money or Property" Element of 18 U.S.C. § 1341

Additionally, Petitioner's argument that his bonus and salary could not satisfy the "money or property" elements of 18 U.S.C. § 1341 is meritless and was previously rejected by Judge Gershon. *See Stinn v. United States*, 856 F. Supp. 2d 531, 542 (E.D.N.Y. 2012) ("The cases cited by petitioner in support of his arguments regarding salary and bonuses are unpersuasive."), *aff'd*, 515 F. App'x 4 (2d Cir. 2013) (summary order); *see United States v. Ratcliff*, 488 F.3d 639, 644 (5th Cir. 2007) ("[A] salary and other financial employment benefits can constitute 'money or property' under the statute."); *cf. United States v. Thompson*, 484 F.3d 877, 884 (7th Cir. 2007) (categorizing a salary raise approved through "normal personnel practices" as outside of the scope of fraud). As Judge Gershon noted, the government did not try to argue that Petitioner "maintained" the salary and bonus incentive he was already receiving, but instead "the record is replete with instances in which the government proffered that [P]etitioner's fraud resulted directly in his receiving a substantial raise and bonus." *Stinn*, 856 F. Supp. 2d at 543.

Petitioner also argues that his bonus would have been paid regardless of any fraud because the company had received a rebate of a previously paid foreign tariff, which triggered his bonus.

(No. 24-CV-2181, Dkt. 1 at 21.)  But he does not point to any evidence presented at trial[6] for that proposition.  (*See id.*)  Instead, the record citations he relies on merely show that Friedman's received the rebate and that Petitioner did not give final approval for the 2002 bonuses until that occurred.  (*Id.* (citing No. 07-CR-0113, Tr. 2666:13–2667:8, 2667:13–21, 2693:21–24, 4320:1–11, 4699:10–17, 4701:12–4703:19).)  By contrast, multiple members of Freidman's management team testified that Petitioner's bonus was tied to Friedman's hitting the EPS target.  (No. 07-CR-0113, Tr. 1955:24–1956:1 ("Q: The bonus for fiscal year 2002 is directly tied to the earnings per share performance of Friedman's stock, correct?  A: It is."); *see also* Tr. 1956:10–16 (explaining same); Tr. 1399:3–1400:6 (similar).)  Petitioner does not identify any evidence presented at trial demonstrating that the rebate impacted EPS in such a way that Petitioner's contingent bonus was triggered.  Because the bonus was contingent on EPS, the logical conclusion the jury could have reached based on the evidence presented at trial is that Petitioner received the 2002 bonus because of "Friedman's fraudulently inflated EPS figures," just as Judge Gershon concluded—not because of receipt of the rebate.  *Stinn*, 856 F. Supp. 3d at 535.  Indeed, at trial, Friedman's former Chief Financial Officer testified that "absent the manipulation[s]," Petitioner would not have received a bonus for 2002.  (No. 07-CR-0113, Tr. 1400:1–6.)  The fact that capital to pay those bonuses may have come from the unexpected rebate does not alter that conclusion.

---

[6] Separately, Petitioner argues that the evidence about his compensation was admitted only for the purpose of motive, but that Judge Gershon failed to give a proper limiting instruction. (No. 24-CV-02181, Dkt. 1 at 18.)  Notably, Petitioner does not cite to the record for the point that the compensation evidence was admitted solely for the purpose of proving motive.  (*See id.*) Rather, the trial transcript demonstrates that Judge Gershon admitted the evidence after argument that it was relevant to motive, and that Petitioner did not seek a limiting instruction.  (No. 07-CR-0113, Tr. 239:12–240:20); *see* 21A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 5065 (2024 ed.) ("The burden is on the opponent to seek clarification of the status of the evidence either by objecting to its admissibility or seeking a limiting instruction.").  No limiting instruction was given because none was sought. (*See* No. 07-CR-0113, Tr. 239:12–240:20.)  The jury, then, was free to consider this evidence for purposes beyond establishing Petitioner's motive.

In light of the foregoing, the jury was presented with sufficient evidence to convict Petitioner of fraud under a traditional theory. *Tuzman*, 2024 WL 1173044, at *3 ("Given the nature of the scheme here, combined with the undisputed fact that the district court read the jury the traditional property theory, . . . we are confident that the jury would have convicted [d]efendants under the traditional property theory in the absence of the invalid right-to-control theory.").

Petitioner's motion for a writ of error *coram nobis* is therefore denied.

## II.    Rule 60(b) Motion

### A.    Legal Standard

"Rule 60(b) permits the Court to relieve a party from an order in the event of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or for other reason that justifies relief." *Lilakos v. New York City*, No. 14-CV-5288 (PKC) (LB), 2016 WL 6768943, at *1 (E.D.N.Y. Nov. 15, 2016) (quoting *Dziennik v. Sealift, Inc.*, No. 04-CV-4659 (DLI) (MDG), 2015 WL 1469323, at *2 (E.D.N.Y. Mar. 30, 2015)). "The decision whether to grant a party's Rule 60(b) motion is committed to the 'sound discretion' of the district court," *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012), and because Rule 60(b) is a means of "extraordinary judicial relief," it is properly invoked "only upon a showing of exceptional circumstances," *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (collecting cases). Extraordinary circumstances include "the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." *Buck v. Davis*, 580 U.S. 100, 123 (2017) (quotation marks omitted). A Rule 60(b) motion, however, is not a substitute for an appeal or a vehicle for relitigating an issue already decided. *See Stevens*, 676 F.3d at 67; *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009); *Gustavia Home, LLC v. Hoyer*, No. 16-CV-4015 (PKC) (VMS), 2022 WL 875096, at *2 (E.D.N.Y. Mar. 23, 2022).

**B.      Application**

Petitioner argues that Rule 60(b)(1) authorizes the Court to vacate a final judgment where there is "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), and that Judge Gershon's April 18, 2012 Order should be vacated based on a mistake of law under Rule 60(b)(1) because of the Supreme Court's intervening decision in *Ciminelli*, (Dkt. 33 at 2 (noting that "mistake" has been interpreted to include "legal errors made by judges" (citing *Kemp v. United States*, 596 U.S. 528, 530 (2022))).).    Additionally, Petitioner contends that the Court may vacate Judge Gershon's Order because "the judgment is void" under Rule 60(b)(4).  (*Id.* at 3.)  Lastly, Petitioner believes he is entitled to relief under Rule 60(b)(6) because the Supreme Court's decision in *Ciminelli* is an "extraordinary circumstance."  (*Id.* at 3–4.)

         1.      <u>Mistake of Law Theory is Time-Barred</u>

Petitioner's motion to vacate the final judgment under Rule 60(b)(1) is time-barred.  A motion made under Rule 60(b) "must be made within a *reasonable time*—and for [Rules 60](b)(1), (2), and (3) *no more than a year after the entry of the judgment or order or the date of the proceeding*." Fed. R. Civ. P. 60(c)(1) (emphasis added).  Petitioner argues that the Supreme Court's decision in *Buck* measured the limitations period from the date of the Supreme Court case that abrogated the law.  (Dkt. 33 at 5.)  While this is true, the *Buck* decision resulted from a Rule 60(b)(6) motion, not a Rule 60(b)(1) motion.  *Buck*, 580 U.S. at 123.  The one-year time bar does not apply to Rule 60(b)(6) motions.  *See* Fed. R. Civ. P. 60(c)(1).  Petitioner's argument ignores the statute's explicitly stricter statute of limitations for motions under Rules 60(b)(1)–(3).  *Id.* Therefore, Petitioner's theory under Rule 60(b)(1) is time-barred; thus, the Court may not consider Petitioner's argument that the April 18, 2012 Order was a "mistake" as a matter of law.

2.    The Court Had Jurisdiction over Petitioner's Conviction

Petitioner asserts that the final judgment on the original *habeas* petition is void under Rule 60(b)(4) because Judge Gershon lacked jurisdiction to enter a judgment.  Petitioner reasons that, because of the Supreme Court's holding that "the right-to-control theory vastly expands federal jurisdiction without statutory authorization," *Ciminelli*, 598 U.S. at 315, "the Court exercised jurisdiction where it had none," (Dkt. 33 at 3 ("This Court did not have jurisdiction to conclude that Stinn was properly convicted of fraud based on the right to control theory.")).  Petitioner interprets Rule 60(b) to preserve parties' opportunity "to obtain vacatur of a judgment that is void for lack of subject-matter jurisdiction," (Dkt. 43 at 18); *Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005), and argues that where the Supreme Court struck down the right-to-control theory, subject matter jurisdiction and hence this Court's authority to adjudicate the criminal conviction, was also extinguished.

In response, the government argues that this Rule 60(b)(4) motion actually attacks the underlying criminal conviction rather than the initial *habeas* proceeding.  (Dkt. 42 at 23 (first citing *Harris v. United States*, 367 F.3d 74, 77 (2d Cir. 2004) ("We ruled in *Rodriguez v. Mitchell*, 252 F.3d 191 (2d Cir. 2001), that relief under Rule 60(b) is available with respect to a previous habeas proceeding only when the Rule 60(b) motion attacks the integrity of the habeas proceeding and not the underlying criminal conviction."); then citing *Rodriguez v. Mitchell*, 252 F.3d 191 (2d Cir. 2001)).)

Here, the government is correct.  Petitioner attacks the underlying conviction rather than the *habeas* proceeding itself.  For example, Petitioner claims that in the underlying *habeas* proceeding, "[t]his Court did not have jurisdiction to conclude that Stinn was properly convicted of fraud based on the right to control theory."  (Dkt. 33 at 3.)  That statement is false.  This Court *did* have jurisdiction to review Petitioner's petition pursuant to 28 U.S.C. § 2255.  *Maleng v. Cook*,

490 U.S. 488, 490 (1989) ("The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are *in custody* in violation of the Constitution or laws or treaties of the United States." (emphasis in original)). Judge Gershon properly did not find a jurisdictional deficiency at the time of her April 18, 2012 Order. At the time of that ruling, the Second Circuit had validated the right-to-control theory, which the Supreme Court only recently struck down. So, even if the conviction had been entirely premised on the right-to-control theory, Judge Gershon was not required to vacate and set aside the judgment at the time of Petitioner's original *habeas* petition. Therefore, it is clear that Petitioner is actually attacking the underlying conviction by challenging this Court's jurisdiction over the judgment entered after trial, as opposed to challenging the previous *habeas* proceeding, as he purports. *Harris*, 367 F.3d at 77.

When a court is presented with a Rule 60(b) motion that "attacks the underlying conviction," the Court has "two procedural options: (i) the court may treat the Rule 60(b) motion as 'a second or successive' habeas petition, in which case it should be transferred to [the Second Circuit] for possible certification, or (ii) the court may simply deny the portion of the motion attacking the underlying conviction 'as beyond the scope of Rule 60(b).'"[7] *Id.* at 82. Here, certification as a successive *habeas* petition is inappropriate because Petitioner is no longer in custody. 28 U.S.C. § 2255(a); *Maleng*, 490 U.S. at 490 (explaining that the federal *habeas* statute gives district courts jurisdiction to grant *habeas* relief only for persons in custody). (*See also* No. 24-CV-2181, Dkt. 1-1 ¶ 5 (noting that Petitioner's term of supervised release concluded on

---

[7] Even if a Rule 60(b) motion was procedurally proper here, "a judgment may be declared void for want of jurisdiction only when . . . there is a total want of jurisdiction and no arguable basis on which [the court] could have rested a finding that it had jurisdiction." *Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 190 (2d Cir. 2003). That is not the case here. *See supra* Discussion Part I.B.

September 22, 2022).)[8]  Therefore, the Court must deny the portion of this motion challenging this

Court's jurisdiction under Rule 60(b)(4) as beyond the scope of Rule 60(b).  *Harris*, 367 F.3d at

82.

3.    The Previous Denial of *Habeas* Relief Does Not Constitute an
"Extraordinary Circumstance" Warranting Vacatur of the Conviction

Petitioner contends that he is entitled to relief under Rule 60(b)(6) based on the presence

of extraordinary circumstances because Judge Gershon and the Second Circuit improperly

"concluded that an intangible right (the public's supposed right to information) satisfied the

property element of wire fraud."  (Dkt. 33 at 4.)  Petitioner cites to *Buck v. Davis* for the proposition

that an extraordinary circumstance is present where a sentence is based on an unconstitutional

consideration and might "undermin[e] the public's confidence in the judicial process."  580 U.S.

100, 123 (2017).

This analogy falls flat.  In *Buck v. Davis*, the State argued at a capital sentencing "that a

defendant [was] liable to be a future danger because of his race."  *Id.* at 119.  That "patently

unconstitutional" consideration is a far cry from the circumstances presented here.  *Id.*  As the

Second Circuit recently explained, "[t]o the extent that *Ciminelli* relied on constitutional principles

such as federalism to arrive at its conclusion, that does not mean that it announced a new rule of

constitutional law."  *Binday v. United States*, No. 21-1206, 2024 WL 2965245, at *1 (2d Cir. May

6, 2024), *cert. denied*, No. 23-1290, 2024 WL 4426647 (U.S. Oct. 7, 2024).  Nor did *Ciminelli*

otherwise reach a constitutional holding.  *Id.*  Therefore, Petitioner's assertion that this is an

extraordinary circumstance of constitutional magnitude is inconsistent with the Second Circuit's

reading of *Ciminelli*.

---

[8] The Court notes that even if Petitioner were still incarcerated, the ultimate outcome here
would be the same for the reasons explained *supra* in Part I.

Constitutional considerations aside, "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239 (1997); *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004) ("We note that, as a general matter, a mere change in decisional law does not constitute an 'extraordinary circumstance' for the purposes of Rule 60(b)(6)."), *overruled on other grounds by Donnelly v. Controlled Application Rev. & Resol. Program Unit*, 37 F.4th 44, 57 (2d Cir. 2022); *see also Sec. Exch. Comm'n v. Neto*, 27 F. Supp. 3d 434, 440 (S.D.N.Y. 2014) ("At its core, reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.") (cleaned up); *Nelson v. City of Stamford*, No. 12-CV-0294 (VLB), 2012 WL 3155999, at *2 (D. Conn. Aug. 3, 2012) ("Even '[a] circuit court's announcement of a new rule of federal law, like a Supreme Court pronouncement, is similarly insufficient without more to justify Rule 60(b)(6) relief.'" (quoting *Batts v. TowMotor Forklift Co.*, 66 F.3d 743, 748 n.6 (5th Cir. 1995))); *United Airlines, Inc.*, 588 F.3d at 176 (same).

Moreover, the Supreme Court's ruling in *Ciminelli* does not alter traditional fraud. "*Ciminelli* did not reject the premise that depriving a victim of information in order to induce the victim to part with traditional property can be fraud. *Ciminelli* simply rejected the notion that *information itself can be property*." *United States v. An*, No. 22-CR-0460 (KAM), 2024 WL 2010017, at *8 (E.D.N.Y. May 7, 2024) (emphasis in original). As such, Petitioner has "failed to establish that the jury convicted him . . . on a right-to-control theory." (Dkt. 42 at 24.) Indeed, as Judge Gershon explained in the April 18, 2012 Order, the government presented evidence that Petitioner deprived Friedman's of a traditional property right—its money—through his $300,000 increase in salary and $352,000 contingent bonus which were "a direct result of [P]etitioner's

fraud." (Dkt. 29 at 16.)  Thus, Judge Gershon did not rely entirely or even substantially on the right-to-control theory in denying Petitioner's original *habeas*.  (*Id.*)  Therefore, this case does not present an "extraordinary circumstance" that warrants re-opening the federal *habeas* petition.[9]

## CONCLUSION

Based on the foregoing, Petitioner's motions for a writ of *coram nobis* and pursuant to Rule 60(b) are denied.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: December 5, 2024
       Brooklyn, New York

---

[9] Even if an extraordinary circumstance were present, the Court would not be able to procedurally re-open the *habeas* petition as Petitioner is no longer "in custody" within the meaning of the federal *habeas* statute.  *Maleng*, 490 U.S. at 490.